United States District Court
Southern District of Texas
**ENTERED**
September 03, 2021
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| LORNE OLDS, *et al*, (TDCJ–CID #2247273), Plaintiffs, | § § § § § |
| | CIVIL ACTION NO. 4:18-cv-00877 |
| vs. | § § § § JUDGE CHARLES ESKRIDGE |
| JUDGE ED EMMETT, *et al.*, Defendants. | § § § § § |

## MEMORANDUM AND OPINION DISMISSING CLAIMS

Plaintiffs Darrell Wayne Watson, Corey Morris, and Gregory Scott Richardson were previously dismissed from this action for want of prosecution. Plaintiff Eugene Lester is now also dismissed without prejudice on that basis.

The complaint filed by Plaintiffs Lorne Olds and Felton Paul Lambert is dismissed with prejudice as frivolous. Dkt 1.

1. Background

Watson, Morris, Richardson, Olds, Lambert, and Lester initiated this lawsuit in March 2018. They're all former inmates of the Harris County Jail. They complain of deprivation of sunlight and fresh air in violation of the Eighth Amendment, asserting that the HCJ located at 1200 Baker Street has no windows. Dkt 1 at 3. Such deprivation began on April 15, 2017.

Plaintiffs sue the following Defendants:

- o Ed Emmet, Judge of the Harris County Commissioner's Court, alleging that he was negligent in adopting the blueprints of the 1200 Baker Street building;

- o Ed Gonzalez, Sheriff of Harris County, Texas, alleging that he failed to ensure that inmates received Vitamin D;
- o John Martin, HCJ Building Administrator, alleging that he failed to renovate the building to ensure that inmates received sunlight;
- o S. Ward, a sergeant at the HCJ, alleging that he said to Watson, "I don't think they are going to tear down a $60,000,000 building just to give you sunlight," but that he would schedule Watson's recreation when the sun was at its peak;
- o Rodney Ellis, Harris County Commissioner, without alleging what he did to violate their rights;
- o Bobby Davis, HCJ Medical Director, alleging that he failed to recognize the detrimental effects resulting from sunlight deprivation;
- o Aramark Food Services and Aramark Building Maintenance, the HCJ Building Manager and food supplier, alleging that they failed to take steps to provide inmates with fresh air and to supplement their food with Vitamin D; and
- o Dr. Michael Seale, HCJ Medical Director, alleging that he referred Watson to Dr. Nguyen who said, "You have a legitimate complaint," and "Do you have a lawyer?"

Dkt 1 at 14–15.

Plaintiffs assert that deprivation of sunlight can cause memory loss, mood swings, sleep disorders, anxiety, depression, and increase the risk of heart disease. Plaintiffs seek $250,000,000 in actual damages and $750,000,000 in punitive damages. Dkt 1 at 5.

Norris, Richardson, and Watson were previously dismissed for want of prosecution in September 2018 and July 2020. Dkts 42, 65.

Olds, Lambert, and Lester are current inmates of the Texas Department of Criminal Justice—Correctional Institutions Division. They proceed here *pro se* and *in forma pauperis*. Dkts 22,

23, 36. They were ordered to file more definite statements in July 2020. Dkts 64, 66, 67.

Lester failed to comply. As determined below, he will be dismissed from this action for want of prosecution.

Olds complied but without much detail. He states that the allegations concern the deprivation of sunlight, but he doesn't have access to the original complaint. Dkt 68. He separately seeks permission to file an amended complaint regarding claims of medical conditions resulting from exposure to black mold, lack of mental health care, and an alleged use of excessive force. Dkt 68 at 1; Dkt 72.

Lambert filed an initial response on August 6, 2020. Dkt 69. He references deprivation of sunlight and exposure to black mold. He didn't remember the names of the defendants and couldn't say how they were personally involved, but he recalled that his complaints were ignored. Lambert claimed that sunlight deprivation worsened his diabetes, while also causing skin and vision problems and headaches. He states that an HCJ doctor told him that his condition was caused by deprivation of sunlight, but he never received treatment for lack of sunlight. The doctor said they didn't prescribe Vitamin D and couldn't cut a window in the jail. Lambert received skin lotion, increased insulin, and a stronger prescription for glasses.

Lambert filed a second response on August 20, 2020, requesting that his first response be disregarded. Dkt 71 at 1. He stated that he still doesn't remember the defendants' names. He claims that they didn't provide windows to let in sunlight and should have transferred him to a jail with sunlight or prescribed Vitamin D. Id at 2. He claims sunlight deprivation played a major role in his ongoing health issues, including skin problems, hair loss, and worsening diabetes. Id at 3. He states that his current medical conditions are uncontrolled diabetes, loss of vision, and skin discoloration. He has received a higher dosage of insulin, a stronger prescription for glasses, skin lotion, increased psychotropic medications, and pain medications. Id at 4. He alleges that HCJ doctors said they didn't offer Vitamin D treatment because they would have to treat all inmates and that was not in the budget.

### 2. Legal standard

A federal court must dismiss an action in which the plaintiff proceeds *in forma pauperis* on determination that the action is frivolous or malicious. 28 USC § 1915(e)(2)(B)(i). A complaint is *frivolous* "if it lacks an arguable basis in law or fact." See *Denton v Hernandez,* 504 US 25, 31 (1992), quoting *Neitzke v Williams*, 490 US 319, 325 (1989); *Richardson v Spurlock,* 260 F3d 495, 498 (5th Cir 2001), citing 28 USC § 1915(e)(2). And it lacks *an arguable basis in law* "if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v Scott,* 157 F3d 1003, 1005 (5th Cir 1998), quoting *McCormick v Stalder,* 105 F3d 1059, 1061 (5th Cir 1997).

### 3. Analysis

The claims by Olds and Lambert will be dismissed as frivolous. The claims by Lester will be dismissed for want of prosecution.

#### a. Deprivation of sunlight

The HCJ houses both pretrial detainees and convicted prisoners awaiting transfer to the TDCJ. The Fifth Circuit has long recognized each as a distinct group, while "look[ing] to different constitutional provisions for their respective rights to basic needs such as medical care and safety." *Hare v Corinth,* 74 F3d 633, 639 (5th Cir 1996, *en banc*), citing *Estelle v Gamble,* 429 US 97, 104 (1976). While convicted state prisoners are protected by the Eighth Amendment's prohibition on cruel and unusual punishment and (to a limited degree) substantive due process, pretrial detainees are protected by the "procedural and substantive due process guarantees of the Fourteenth Amendment." Ibid. As such, conditions of confinement may "constitute deprivations of liberty without due process if they amount to punishment of the detainee." *Harris v Angelina County,* 31 F3d 331, 334 (5th Cir 1994). Indeed, the Fifth Circuit holds, "The State cannot punish a pretrial detainee." *Hare,* 74 F3d at 639, citing *Bell v Wolfish,* 441 US 520, 535 (1979).

A proper determination of whether a condition of confinement of a pretrial detainee amounts to punishment "turns

4

on whether 'the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" *Harris,* 31 F3d at 334, quoting *Bell,* 441 US at 538. "Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell,* 441 US at 539. But given the heightened due-process protection afforded pretrial detainees, confinement conditions that violate the Eighth Amendment assuredly violate a pretrial detainee's due-process rights under the Fourteenth Amendment as well. See *Hare,* 74 F3d at 639; *Harris,* 31 F3d at 334.

When a pretrial detainee challenges "general conditions, practices, rules, or restrictions of pretrial confinement," the *Bell* test applies—the challenged policy or condition must be reasonably related to a legitimate governmental interest (such as ensuring security). *Hare,* 74 F3d at 643. But when a pretrial detainee challenges a jailor's "episodic acts or omissions, the *Bell* test is inapplicable, and the proper inquiry is whether the official had a culpable state of mind in acting or failing to act." Ibid.

Plaintiffs complain of deprivation of sunlight at the HCJ, asserting that the failure to provide pretrial detainees with sunlight amounts to an unconstitutional punishment. The Supreme Court in *Bell v Wolfish* observed as follows with respect to conditions in pretrial detention:

> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. Traditionally, this has meant confinement in a facility which, no matter how modern or how antiquated, results in restricting the movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets pending trial. Whether it be called a jail,

5

> a prison, or a custodial center, the purpose of the facility is to detain. Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment."

441 US at 520. "Detainment itself, however, requires that the State provide for inmates' basic human needs." *Shepherd v Dallas County,* 591 F3d 445, 453 (5th Cir 2001). To raise a due-process claim, a detainee must allege "a pattern of serious deficiencies in providing for his basic human needs." Id at 454.

In *Mayfield v Ellett*, the Fifth Circuit addressed complaints by a pretrial detainee regarding the denial of outdoor recreation. 1996 WL 670432 (5th Cir). Its observations are pertinent here:

> Mayfield testified that, although he was permitted regular access to the dayroom and the jail gymnasium, he was never afforded outdoor recreation. Mayfield concedes that the gymnasium had a frosted skylight, but argues, without any indication of supporting evidence, that this was inadequate. Chief Deputy de Presca testified that the Panola County Jail has no outdoor recreation facility and that the skylight was installed in the gymnasium in 1985 to meet the state requirement that inmates be given access to sunlight. De Presca further testified that inmates, including Mayfield, were given access to the gymnasium at least three times weekly, at least one hour at a time. Mayfield did not dispute this.
>
> Given the physical constraints of the Panola County Jail facility, we are convinced that the facts alleged by Mayfield would not even arguably suffice to sustain a finding that he

6

> was unconstitutionally punished within the meaning of the Fourteenth Amendment. As *Bell* recognized that ensuring security and order at detention facilities is a permissible nonpunitive objective, we cannot say that the scheme employed at the Panola County Jail facility does not strike a permissible balance between meeting that permissible objective and affording inmates needed recreation and sunlight to the extent reasonably and practically available. *See Block v Rutherford,* 104 S Ct at 3234 (stating that a federal court's "balancing" of a detention facility's security measures against the importance of family visits resulted in impermissible substitution of the court's views regarding prison administration). Whatever remains of the general language set forth in *Miller* after *Bell* and *Green,* we are quite certain that it does not confer a constitutional right to exercise in *unfiltered* sunlight in an otherwise acceptable custodial facility regardless of the facility's physical constraints. To hold otherwise would fly in the face of *Bell*'s admonition against becoming enmeshed in the minutiae of prison operations.
>
> Accordingly, we hold that the magistrate judge did not abuse her discretion by dismissing Mayfield's claim regarding inadequate outdoor recreation as frivolous.

1996 WL 670432, at *8 (footnote omitted).

With these precepts in mind, it's clear that Plaintiffs can't prevail on a *conditions-of-confinement* theory. They complain of the lack of windows at the HCJ and a resulting lack of sunlight. But they don't allege that the lack of windows at the HCJ wasn't reasonably related to a legitimate governmental objective. See *Duvall v Dallas County*, 631 F3d 203, 207 (5th Cir 2011). And quite simply, construction of the HCJ was designed to ensure security and order. This is a permissible nonpunitive objective. And it is

7

jail administrators—not the courts—who "are to make the difficult judgments concerning institutional operations." *Turner v Safley*, 482 US 78, 89 (1987) (quotations omitted). Given the physical constraints of the HCJ, the facts as alleged by Plaintiffs don't suffice to sustain a finding that they were unconstitutionally punished within the meaning of the Fourteenth Amendment.

Plaintiffs likewise can't prevail under an *episodic-acts-or-omissions* theory. To do so, they must show that "the official 'acted or failed to act with deliberate indifference to the detainee's needs.'" *Brown v Bolin*, 500 F App'x 309, 314 (5th Cir 2012), quoting *Hare*, 74 F3d at 648. To establish *deliberate indifference* in this context requires the plaintiff to "establish that the official knew of and disregarded an excessive risk of inmate health or safety." *Brown*, 500 F Appx at 314, citing *Farmer v Brennan*, 511 US 825, 837 (1994). This is an "extremely high standard." *Domino v Texas Department of Criminal Justice*, 239 F3d 752, 756 (5th Cir 2001), citing *Johnson v Treen*, 759 F2d 1236, 1238 (5th Cir 1985). The Fifth Circuit holds, "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brown*, 500 F Appx at 314, quoting *Farmer*, 511 US at 837.

Plaintiffs' conclusory allegations of deliberate indifference are insufficient to maintain this claim. The Fifth Circuit squarely holds that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v Allied Pilots Association*, 987 F2d 278, 284 (5th Cir 1993); see also *Van Cleave v United States*, 854 F2d 82, 84 (5th Cir 1988) (requiring claimant to state specific facts and finding conclusory allegations insufficient to maintain Section 1983 claim). To the contrary, Plaintiffs here simply allege that deprivation of sunlight caused various adverse health effects and worsened other conditions. This is insufficient to plausibly infer that Defendants had actual knowledge of a substantial risk of serious harm to a pretrial detainee as is needed to establish deliberate indifference. See *Hare*, 74 F3d at 650. This is especially so given the existence of legitimate security reasons for restricting Plaintiffs' access to outdoor recreation in direct sunlight. And the Supreme Court mandates that courts accord broad deference to prison administrators' "adoption and

execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell,* 441 US at 547 (1979).

Plaintiffs' pleadings also reference the HCJ's response to grievances. HCJ administrators referred to security concerns which naturally prohibited the ability of cutting windows into the walls of the HCJ. Plaintiffs also specifically reference that administrators indicated that they would schedule recreation at a time when the sun was at its peak. Dkt 1 at 7. This suggests that Plaintiffs had access to sunlight at some point, undercutting their suggestion of deliberate indifference.

Plaintiffs state no facts which give rise to a claim that any person, condition, or policy deprived them of a basic human need, or that any person intended to punish them by subjecting them to an unconstitutional condition. The claim is conclusory and will be dismissed as frivolous.

### b. Denial of adequate medical treatment

Plaintiffs were in custody at the HCJ following their arrest as pretrial detainees. Liberally construed, they allege that they were denied adequate medical treatment for Vitamin D deficiency.

"[P]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v Upshur County*, 245 F3d 447, 457 (5th Cir 2001); see also *Gibbs v Grimmette*, 254 F3d 545, 548 (5th Cir 2001), citing *Hare v City of Corinth*, 74 F3d 633, 643 (5th Cir 1996, *en banc*).

Standards by which to assess deliberate indifference have been set out above. The Supreme Court has also stated:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or

9

> delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Estelle v Gamble*, 429 US 97, 104–05 (1976), quoting *Gregg v Georgia*, 428 US 153, 173 (1976). And again, the standard is an "extremely high" one to meet. *Domino*, 239 F3d at 756. Actions and decisions by officials as to medical treatment that are "merely inept, erroneous, ineffective or negligent" don't amount to deliberate indifference. *Doe v Dallas Independent School District*, 153 F3d 211, 219 (5th Cir 1998); see also *Farmer*, 511 US at 835. This means that neither medical malpractice nor negligent treatment present an issue of federal constitutional dimension. *Mendoza v Lynaugh,* 989 F2d 191, 195 (5th Cir 1993).

Plaintiffs haven't stated a claim for denial of adequate medical treatment sufficient to meet this extremely high standard. For example, Lambert by his own admission acknowledges that he received lotion for a skin condition, a higher dosage of insulin, a stronger prescription for glasses, increased psychotropic medications, and pain medications. Dkt 71 at 4. This negates his claim of deliberate indifference. For example, see *Bass v Sullivan*, 550 F2d 229 (5th Cir 1977); *Mendoza*, 989 F2d at 193–95.

As previously noted, it is clearly established that an incorrect diagnosis by prison medical personnel doesn't suffice to state a claim for deliberate indifference. The plaintiff must instead show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson,* 759 F2d at 1238. Plaintiffs' allegations don't approach any such level of concern.

Simply put, Plaintiffs haven't alleged facts demonstrating that Defendants were aware of and disregarded a substantial risk of harm to them, or that they suffered substantial harm as a result of the alleged denial of treatment. Their claims pursuant to Section 1983 based on deliberate indifference to their serious medical needs will be dismissed as frivolous.

### c. Claims against Aramark

Plaintiffs name Aramark as a defendant in this action. They allege that Aramark provides meals for detainees and inmates at

the HCJ and manages the building located at 1200 Baker Street, Houston, Texas.

To state a claim under Section 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v Atkins*, 487 US 42, 48 (1988). "[T]he under-color-of-state-law element of [section] 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *American Manufacturers Mutual Insurance Co v Sullivan*, 526 US 40, 50 (1999) (quotations omitted).

Here, Plaintiffs alleged that Aramark violated their constitutional rights. Claims based on deprivation of constitutional rights must proceed under 42 USC § 1983. That statute requires a plaintiff to present facts that, if proven, would show the deprivation of a right secured by the Constitution or laws of the United States, and that the deprivation was caused by someone acting under color of state law. *Baker v McCollan,* 443 US 137 (1979).

Aramark is a corporation. Corporations can qualify as state actors under Section 1983 in certain circumstances. See *Lugar v Edmondson Oil Co, Inc*, 457 US 922, 939 (1982) (recognizing three tests of general application for determining whether private party may be held to be state actor). For example, a private corporation providing medical services in a jail is considered a state actor for purposes of Section 1983. See *Bishop v Karney*, 408 F App'x 846, 848 (5th Cir 2011), citing *West v Atkins*, 487 US 42, 49–50, 54–57 (1988); *Stone v Gusman*, 2017 WL 3037632, at *3 (ED La). For present purposes, it is assumed without deciding that a private corporation providing food services in a jail is likewise considered a state actor because it assumed the role of providing an essential state function. For example, see *Hardin v Aramark Food Services Corp*, 2017 WL 1658812, at *4 (CD Ill); *Avery v Helder*, 2017 WL 776702, at *3 (WD Ark).

Still, Plaintiffs raise no viable Section 1983 claim against Aramark. Plaintiffs contend that Aramark failed to supplement food served at the HCJ with Vitamin D. Such complaints don't rise to the level of a federal constitutional violation under the

11

Fourteenth Amendment. "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Talib v Gilley*, 138 F3d 211, 214 n 3 (5th Cir 1998), quoting *Rhodes v Chapman*, 452 US 337, 347 (1981). Constitutional violations in this regard aren't established by showing mere discomforts associated with incarceration such as those instances where complaint centers on minor inadequacies with respect to jail food. For example, see *Hyder v Perez*, 1996 WL 255243, *1 (5th Cir) (upholding dismissal of claims as frivolous that quantities of food were inadequate).

This allegation by Plaintiffs doesn't indicate a denial of "the minimal civilized measure of life's necessities" as to Aramark's meal services at the HCJ. Plaintiffs simply don't allege a significant or sustained adverse health effect caused by the lack of food supplemented with Vitamin D. As such, no issue of a constitutional dimension is raised.

Plaintiffs' allegations against Aramark will be dismissed as legally frivolous.

### d. Want of prosecution

Lester is an inmate at the TDCJ–CID. He was ordered in July 2020 to provide a more definite statement and advised that his complaint was otherwise subject to dismissal without prejudice for want of prosecution. Dkt 66. He hasn't complied.

Lester will be dismissed from this action for want of prosecution pursuant to the inherent powers necessarily vested in a district court to manage its own affairs. See FRCP 41(b); *Link v Wabash Railroad Co*, 370 US 626, 630–31 (1962); *Clofer v Perego,* 106 F3d 678, 679 (5th Cir 1997); James W. Moore, *et al.*, 8 *Moore's Federal Practice* § 41.51(3)(b) & (e) (Matthew Bender 3d ed 2017). The Court will grant relief upon a proper showing under Rule 60(b) of the Federal Rules of Civil Procedure. See *Link*, 370 US at 635.

### 4. Motion to amend complaint

Olds seeks leave to file an amended complaint. Dkts 68, 72. Specifically, he seeks to amend his complaint to allege exposure to black mold and excessive force.

A party may generally amend his original pleading as a matter of course within twenty-one days of service. FRCP 15(a)(1). Otherwise, a party may amend only with the opponent's written consent or permission of the court. FRCP 15(a)(2). "The court should freely give leave when justice so requires." Ibid. The determination of whether justice so requires is within the sound discretion of a district court. See *Chitimacha Tribe of Louisiana v Harry L Laws Co,* 690 F2d 1157, 1162 (5th Cir 1982) (citations omitted). And leave to amend should be allowed absent substantial reason for denial. *Jacobsen v Osbourne,* 133 F3d 315, 318 (5th Cir 1998). Typical reasons to deny leave include situations where the proposed amendment would cause undue delay or prejudice to the nonmovant, if it is motivated by bad faith or dilatory motives, if there have been repeated failures to cure deficiencies with prior amendments, or if the amendment would be futile. *Foman v Davis,* 371 US 178, 182 (1962); see also *Martin's Herend Imports, Inc v Diamond & Gem Trading United States of America Co*, 195 F3d 765, 770 (5th Cir 1999); *Wimm v Jack Eckerd Corp*, 3 F3d 137, 139 (5th Cir 1993).

Substantial reasons are present here to deny leave to amend. The existing claims are subject to dismissal as frivolous, as determined above. And addition of the new claims proposed by Olds would cause undue delay and prejudice to Defendants. The proposed amendment has no relation to the claims already filed in this action, which focus on complaints about the deprivation of sunlight.

Olds may attempt to bring such claims in a separate civil action if he so desired. But he can't at this stage add new and completely unrelated claims to this action while bringing in new defendants. The motions for leave to file an amended complaint will be denied. Dkts 68, 72.

5. Conclusion

Plaintiff Eugene Lester is DISMISSED WITHOUT PREJUDICE from this action for want of prosecution.

The complaint filed by Plaintiffs Loren Olds and Felton Paul Lambert lacks an arguable basis in law. It is DISMISSED WITH PREJUDICE under 28 USC § 1915(e)(2)(B)(i).

13

The motions by Olds for leave to file an amended complaint are DENIED. Dkts 68, 72.

Any other pending motions are DENIED as moot.

The Clerk of Court will send a copy of this Order to:

> Manager of the Three-Strikes List
> Southern District of Texas
> Three_Strikes@txs.uscourts.gov.

SO ORDERED.

Signed on September 3, 2021, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge